ORIGINAL

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST HEALTH GROUP CORP.,<br>3200 Highland Avenue<br>Downers Grove, IL 60515-1282, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO.<br>1:00-CV-312 |
| | : | |
| v. | : | *J. Kane* |
| | : | |
| NATIONAL PRESCRIPTION | : | **FILED**<br>HARRISBURG, PA |
| ADMINISTRATORS, INC., | : | |
| 711 Ridgedale Avenue | : | JUL 1 4 2000 |
| East Hanover, NJ 07936 | : | |
| | : | MARY E. D'ANDREA, CLERK |
| And | : | Per _____ |
| | : | Deputy Clerk |
| DAVID W. NORTON, | : | |
| 1220 Whitby Road | : | |
| Richmond, VA 23277, | : | |
| | : | |
| Defendants | : | |
| | : | |

## DEFENDANTS' REVISED BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page Numbers**

**Introduction**                                                              1

**Statement of Facts**                                                        4

**Argument**                                                                  4

I.   A PRELIMINARY INJUNCTION SHOULD NOT                                      4
     BE ISSUED BECAUSE THERE HAS BEEN NO
     SHOWING OF THE LIKELIHOOD OF SUCCESS
     ON THE MERITS, THERE HAS BEEN NO
     SHOWING OF THE PROBABILITY OF IRREPARABLE
     HARM AND IT WOULD ADVERSELY EFFECT OTHER
     INTERESTED PERSONS AND THE PUBLIC INTEREST

II.  THE PLAINTIFF'S INTERPRETATION OF NORTON'S                               5
     RESTRICTIVE COVENANT IS NOT REASONABLE

III. CONTRARY TO COUNT I OF FIRST HEALTH'S                                    8
     COMPLAINT, NORTON HAS NOT BREACHED AND
     WILL NOT BREACH HIS CONTRACT WITH FIRST
     HEALTH

IV.  CONTRARY TO COUNT II AND COUNT VI OF FIRST                               9
     HEALTH'S COMPLAINT, NEITHER NORTON NOR
     NPA HAS MISAPPROPRIATED ANY TRADE SECRETS

     INEVITABLE DISCLOSURE                                                    12

V.   CONTRARY TO COUNT III AND COUNT IV, NORTON                               15
     HAS NOT BREACHED ANY FIDUCIARY DUTY TO
     FIRST HEALTH AND NPA HAS NOT INDUCED ANY
     BREACH OF FIDUCIARY DUTY

     SOLICITATION                                                             15

     CORPORATE RAIDING                                                        17

     CONFIDENTIALITY OF A "UNIFIED PROCESS"                                   19

i

|  |  | Page Numbers |
|---|---|---|
| VI. | CONTRARY TO COUNT V AND COUNT VII OF FIRST HEALTH'S COMPLAINT, NPA HAS NOT TORTIOUSLY INTERFERED WITH NORTON'S CONTRACT WITH FIRST HEALTH, AND NEITHER NORTON NOR NPA HAS TORTIOUSLY INTERFERED WITH ANY PROSPECTIVE ECONOMIC ADVANTAGE OF FIRST HEALTH | 24 |
| VII. | FIRST HEALTH HAS BROUGHT THIS ACTION WITH "UNCLEAN HANDS", AND, THUS SHOULD NOT BE PERMITTED TO PURSUE ITS CLAIMS | 25 |
| VIII. | RELIEF CANNOT BE GRANTED BECAUSE OF THE ABSENCE OF AN INDISPENSIBLE PARTY | 26 |
| IX. | THE PLAINTIFF SHOULD NOT BE ALLOWED TO PREVAIL ON ISSUES NOT CLEARLY IDENTIFIED IN DISCOVERY RESPONSES | 26 |
| **Conclusion** | | 28 |

## TABLE OF AUTHORITIES

| | Page Numbers |
|---|---|
| U. S. v. Portsmouth Paving Corp., 694 F. 2d 312 (4th Cir. 1982) | 2,n.1 |
| Mahlandt v. Wild Canid, 588 F. 2d 626 (8th Cir. 1978) | 2,n.1 |
| Campbell Soup Co., v. Conagra, Inc., 977 F.2d 86, 90-91 (3d Cir. 1992) | 4 |
| Hillard v. Medtronic, Inc., 910 F. Supp. 173, 178 (M.D. Pa. 1995) | 4 |
| Radio Hanover, Inc. v. United Utilities, Inc., 273 F. Supp. 709 (M.D. Pa. 1967) | 4,5 |
| Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir. 1937) | 5 |
| McRand, Inc. v. Beelan, 486 N.E. 2d 1306, 1311 (1985) | 5,6 |
| Donald McElroy, Inc. v. Delaney, 389 N.E. 2d 1300, 1305 (1979) | 5 |
| Image Supplies, Inc. v. Hilmert, 390 N.E. 2d 68,70 (1979) | 6 |

|                                                                                                                          | Page Numbers |
|--------------------------------------------------------------------------------------------------------------------------|:------------:|
| Aristocrat Window Co. v. Randell, 206 N.E. 2d 545, 551-552 (1965)                                                         | 6            |
| Coady v. Harpo, Inc., 719 N.E. 2d 244, 250 (1999)                                                                        | 6,8          |
| Jefco Lab., Inc., v. Carroo, 483 N.E. 2d 999, 1001 (1985)                                                                | 6,11         |
| Slijepcevich v. Caremark, Inc., 1996 WL 11137 (N.D. Ill.)                                                                | 6            |
| Serv. Centers of Chicago, Inc. v. Minogue, 535 N.E. 2d 1132, 1136 (1989)                                                 | 7            |
| Disher v. Fulgoni, 464 N.E. 2d 639 (1984)                                                                                | 7            |
| PepsiCo, Inc. v. Redmond, 54 F.3d 1262, 1272 n.10 and 765 ILCS §1065/8(b)(1)                                             | 8,13,14      |
| Gallagher Corp. v. Russ, 721 N.E. 2d 605, 611 (1999)                                                                     | 9            |
| Elson v. State Farm and Casualty Co., 691 N.E. 2d 807, 811 (1998)                                                        | 9            |
| Glenn Matthews and Maint. Supply Co., Inc., v. Unisource Worldwide, Inc., 748, A.2d 219, 221 (Pa. Super. 2000)           | 9            |
| Pope v. Alberto-Culver Co., 694 N.E. 2d 615, 617 (1998)                                                                  | 10           |
| ILG Ind., Inc. v. Scott, 273 N.E. 2d 393, 396 (1971)                                                                     | 10           |
| West Mountain Poultry Co. v. Gress, 455 A.2d 651, 653 (Pa. Super. 1982)                                                  | 10           |
| MacBeth-Evans Glass Co. v. Schnelbach, 86 A. 688, 691 (Pa. 1913)                                                         | 10           |
| Gruenwald v. Advanced Computer Application, Inc., 730 A.2d 1004, 1012-1013 (Pa. Super. 1999)                             | 10           |
| Drummond American Corp. v. Murphy, 1987 WL 16224 at *6 (applying Illinois law)                                           | 10           |
| Packard Inst. Co. v. Reich, 412 N.E. 2d 617 (1980)                                                                       | 10           |
| Smith Oil Corp. v. Viking Chem. Corp., 468 N.E. 2d 797 (1984)                                                            | 11           |
| Brunner & Lay, Inc. v. Chapin, 172 N.E. 2d 652, 655 (1961)                                                               | 11           |
| Teradyne, Inc. v. Clear Comm. Corp., 707 F.Supp. 353, 356 (N.D. Ill. 1989)                                              | 11,13,14     |

**Page Numbers**

E.W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108, 1112-13 (8th Cir. 1969)    11

Spring Steels, Inc. v. Molloy, 162 A.2d 370, 373 (Pa. 1960)    11,12

Morgan's Home Equip. v. Martucci, 136 A.2d 838, 842 (Pa. 1957)    11,17

Bell Fuel Corp. v. Cattolico, 544 A.2d 450, 460 (Pa. Super. 1988)    11

Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy, 203 A.2d 469, 471 (Pa. 1964)    12,18

Envirotest Partners v. Commonwealth of Pennsylvania, Dep't of Transportation, 664 A.2d 208, 214-5 (Pa. Commw. 1995)    12, n.3

Air Products and Chemicals, Inc. v. Johnson, 442 A.2d 1114 (Pa. Super. 1981)    13,14

AMP Inc. v. Fleischhaker, 823 F.2d 1199 (7th Cir. 1987)    13,14

Continental Group Inc., v. Amoco Chem. Corp., 614 F.2d 351 (3d Cir. 1980)    14

Allis-Chalmers Mfg. Co. v. Continental Aviation & Eng. Corp., 225 F. Supp. 645, 648, 654 (E.D. Mich. 1966)    14

Comedy Cottage, Inc. v. Berk, 495 N.E. 2d 1006, 1011 (1986)    15

Smith, Waters, Kuehn, Burnett & Hughes, Ltd. V. Burnett, 548 N.E. 2d 1331, 1336 (1989)    15

Nobelpharma USA, Inc. v. The Straumann Company, 1993 Mass. Super. Lexis 245 (1993)    16

Aetna Building Maint. Co., Inc. v. West, 246 P.2d 11 (1952)    16

Girard v. Rebsamen Insurance Company, 685 S.W. 2d 526 (Ark. 1985)    16

Cronshaw v. Philips Medical Systems, Inc., 1994 WL 622173 (N.D. Ill.) at *5    16

ABC Trans National Transport, Inc. v. Aeronautics Fowarders, Inc., 413 N.E. 2d 1299 (1980)    17,19

Perfect Subscription Co. v. Kavaler, et al., 427 F. Supp. 1289, 1294 (E.D. Pa. 1977)    18

|  | **Page Numbers** |
|---|---|
| Graphic Management Assoc., Inc. v. Steckel and Harris Graphics Corp., 1986 WL 9723 at *7 (E.D. Pa.) | 18 |
| George S. May Int'l Co. v. Int'l Profit Assoc., 628 N.E. 2d 647, (1994) | 19,21 |
| Mettler-Toledo, Inc. v. Todd R. Acker, d/b/a Precision Instrument Serv., 908 F.Supp. 240 (M.D. Pa. 1995) | 21,22,23,n.4 |
| Appleby v. Caradon Thermal-Gard, (M.D. Pa. 1995) | 22 |
| Nat'l Risk Management, Inc. v. Bramwell, 819 F. Supp. 417 (E.D. Pa. 1993) | 23 |
| Anaconda Co. v. Metric Tool & Die Co., 485 F. Supp. 410, 422 (E.D. Pa. 1980) | 23 |
| Continental Data Systems, Inc. v. Exxon Corp., 638 F. Supp. 432, 442 (E.D. Pa. 1986) | 23 |
| McMorris v. Williamsport Hosp., 597 F. Supp. 899, 917 (M.D. Pa. 1984) | 24 |
| Glazer v. Chandler, 200 A.2d 416 (Pa. 1964) | 24 |
| Salomon Smith Barney, Inc. v. Vockel, 2000 WL 558580 at *3 (E.D. Pa.) | 25 |
| Monsanto Co. v. Rohm & Haas Co., 456 F.2d 592, 598 (3d Cir. 1972) | 25 |
| JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., 1998 U.S. Dist. LEXIS 7750 (E.D. Pa. 1998) | 27,28 |
| Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996) | 27 |
| U.S. v. Proctor & Gamble, 356 U.S. 677, 683 (1958) | 28 |
| Hickman v. Taylor, 329 U.S. 495, 501 (1947) | 28 |

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
PENNSYLVANIA**

FIRST HEALTH GROUP CORP.,  
3200 Highland Avenue  
Downers Grove, IL 60515-1282,  

        Plaintiff,  

     v.  

NATIONAL PRESCRIPTION  
ADMINISTRATORS, INC.,  
711 Ridgedale Avenue  
East Hanover, NJ 07936  

    And  

DAVID W. NORTON,  
1220 Whitby Road  
Richmond, VA 23277,  

       Defendants  

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
1:00-CV-312

## DEFENDANTS' REVISED BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

This brief is to be substituted for Defendants' Brief In Opposition To Motion For Preliminary Injunction as allowed by Order of the Court dated July 6, 2000.

### Introduction

The Plaintiff, First Health Group Corporation (First Health), has moved for a preliminary injunction to prohibit (1) Defendants, National Prescription Administrators, Inc., (NPA) and David W. Norton from using or disclosing certain confidential and proprietary business information of First Health; (2) Mr. Norton's calling upon, soliciting or diverting any actual or prospective customers to whom First Health provided, or sought to provide, services within one year of Mr. Norton's termination of employment at First Health; (3) Mr. Norton's direct or indirect solicitation of any individual who is currently or was an employee of First Health during

16808-1                           1

the above one-year period, (4) all conduct by NPA directed toward an unlawful and improper interference with Mr. Norton's obligations under his Employment Agreement dated October 1, 1997 with First Health; (5) Mr. Norton's and NPA's conduct directed toward an unlawful and improper interference with First Health's prospective contractual relationship with the Pennsylvania Department of Aging; (6) NPA's management or administration of the PACE Contract; (7) NPA's further solicitation, discussion or performance of any services with respect to the PACE Contract; (8) NPA's further solicitation or hiring of First Health employees for the PACE Contract; (9) Mr. Norton's participation or involvement in the pricing, solicitation, management or administration of the PACE Contract or any current or future pharmacy benefits administration contract involving the PACE Program or any similar program; or (10) NPA's permitting Mr. Norton to undertake any actions described in item 9. First Health and NPA also seek attorney's fees and costs.

During the preliminary injunction hearing, First Health sought to identify additional information to prevent its own employees from continuing to work on the PACE Program after its takeover by NPA.

First Health has called upon Teresa DiMarco to testify in support of its motion. Her testimony, however, is neither confirmed nor corroborated by any substantive documentation or testimony. Indeed, Ms. DiMarco's testimony, in large part, is contrasted by the testimony of Robert Howells, First Health's Corporate Officer in Charge of the Pace Program[1] and Tom Snedden, the Director of the PACE Program. First Health's case in essence is built upon one unfounded assumption after another unfounded assumption by Ms. DiMarco.

---

[1]     The statements by Mr. Howells are admissions by a party-opponent. Mr. Howells is an agent of First Health and the confidentiality of PACE materials are a matter within the scope of his employment as officer-in-charge of PACE. Fed. R. Evid. 801 (d)(2)(D). See U.S. v. Portsmouth Paving Corp., 694 F. 2d 312 (4th Cir. 1982); Mahlandt v. Wild Canid, 588 F. 2d 626 (8th Cir. 1978). As officer-in-charge of PACE he would be required to know and to advise his staff as to what items must be maintained as confidential and how those items must be protected.

NPA and Mr. Norton have not used or disclosed any confidential, proprietary, or trade secret information of First Health in competing for the PACE contract and there is no evidence to suggest that either NPA or Mr. Norton has used or disclosed such information. The evidence also fails to demonstrate that David Norton in any manner violated the restrictive covenants contained in his employment agreement, which precludes under limited circumstances the solicitation of certain First Health actual and prospective customers and current and prospective employees. The Employment Agreement, however, allows Mr. Norton to "respond to an unsolicited request for proposal by a customer or prospective customer which is a government agency or government contractor." In this circumstance, the Department of Aging issued a Request For Proposal (RFP) seeking competitive bids on the PACE contract. The issuance of that RFP was entirely outside the control or influence of Mr. Norton and cannot be considered to have been solicited by him. In addition, the only allegation of any employee solicitation is based upon a single telephone conversation between Mr. Norton and Mr. Howells, both of whom testified that Mr. Howells, not Mr. Norton, raised the possibility of a job with NPA. That conversation does not rise to the level of a solicitation or hiring prohibited by Mr. Norton's Employment Agreement. The Department of Aging, moreover, has awarded NPA the PACE Contract pending contract negotiations, and assuming the First Health's protest of that bid award is resolved in NPA's favor, First Health has no protectible interest in the stability of that portion of its workforce dedicated exclusively to the PACE Program. Even if First Health did have such an interest, that interest is outweighed by the Commonwealth of Pennsylvania's public policy interest in maintaining and enhancing the viability of the PACE Program itself. The Plaintiff has failed to establish any facts that would allow this Court to interfere with the bidding process by the PDA. The information that First Health seeks to protect is either owned outright by the

---

If the Plaintiff denies this obvious fact, then they have not taken appropriate action to preserve the confidentiality of materials if their officer-in-charge does not believe them to be confidential and would willingly release them.

Department under the PACE Contract, is accessible in the public domain by virtue of First

Health's dealings with the Department, or is a public record as evidenced by the RFP.

### Statement of Facts

The Court is referred to Defendants' Proposed Findings of Fact, which are being filed

simultaneously with this brief, for a complete statement of the facts.

### Argument

**I.    A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED BECAUSE THERE HAS BEEN NO SHOWING OF THE LIKELIHOOD OF SUCCESS ON THE MERITS, THERE HAS BEEN NO SHOWING OF THE PROBABILITY OF IRREPARABLE HARM AND IT WOULD ADVERSELY AFFECT OTHER INTERESTED PERSONS AND THE PUBLIC INTEREST.**

As reiterated by the Third Circuit:

> In order to support a preliminary injunction, plaintiff must show both a likelihood of success on the merits and a probability of irreparable harm. Additionally, the district court should consider the effect of the issuance of a preliminary injunction on other interested persons and the public interest. A district court's denial of a preliminary injunction will be affirmed unless the court abused its discretion, committed an obvious error of law, or made a serious mistake in considering the proof.

Campbell Soup Co.v. Conagra, Inc., 977 F. 2d 86, 90-91 (3d Cir. 1992) (citations omitted). See

also Hillard v. Medtronic, Inc., 910 F. Supp. 173, 178 (M.D. Pa. 1995) (quoting Campbell Soup

Co., 977 F. 2d. at 90-91). Furthermore, a showing of irreparable harm is insufficient if the harm

will occur only in the indefinite future. Rather, the moving party must make a "clear showing

of *immediate* irreparable harm." Campbell Soup Co., 977 F. 2d at 91(citation omitted). As

stated in Radio Hanover, Inc. v. United Utilities, Inc., 273 F. Supp. 709 (M.D. Pa. 1967):

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.''

273 F. Supp. at 713. "It has been well stated that upon an application for a preliminary injunction to doubt is to deny." <u>Madison Square Garden Corp. v. Braddock</u>, 90 F. 2d 924, 927 (3d Cir. 1937), as <u>quoted in Radio Hanover, Inc.</u>, 273 F. Supp. at 714.

The Statement of Facts demonstrates that the Plaintiff has failed to show that it is at all likely to prevail on the merits. In fact, the facts show that the Plaintiff is <u>unlikely</u> to prevail when this matter goes to trial. The claims of the Plaintiff are mere assumptions without factual foundation.

The Plaintiff has also failed to meet its burden of showing immediate irreparable harm. The Plaintiff has not shown that adequate compensatory relief would not be available if they should ever prevail. The vague allegation that First Health will be harmed in competition in other states is too remote and illusory to constitute immediate irreparable harm.

If a preliminary injunction is granted, other interested persons and the public will be adversely impacted. NPA will be denied its opportunity to benefit from its successful bid. David Norton will lose his opportunity for gainful employment. Various vendors, such as Paragon, may be inhibited in the marketing and use of their products and services. The public will be forced to continue paying higher amounts of money to operate the PACE program. All of these adverse results of a preliminary injunction militate against granting the requested relief

## II.    THE PLAINTIFF'S INTERPRETATION OF NORTON'S RESTRICTIVE COVENANT IS NOT REASONABLE.

The question of whether a restrictive covenant is enforceable is one of law and depends upon the reasonableness of its terms. <u>McRand, Inc., v. Beelan</u>, 486 N.E. 2d 1306, 1311 (1985). "In determining whether the covenant is reasonable, it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the covenantor, and whether the restraint imposed is greater than necessary to protect the covenantee." <u>Donald McElroy, Inc. v. Delaney</u>, 389 N.E. 2d 1300, 1305 (1979). Restrictive covenants are carefully

16808-1                                                  5

scrutinized. They may be held "enforceable only if the time limit and geographic scope are reasonable, trade secrets or confidential information are involved, and the restriction is reasonably necessary for the protection of a legitimate business interest." Image Supplies, Inc. v. Hilmert, 390 N.E. 2d 68,70 (1979). Agreements not to compete must not be injurious to public interest and must not be in restraint of trade. Aristocrat Window Co. v. Randell, 206 N.E. 2d 545, 551-552 (1965). Illinois courts "abhor restraints on trade." Coady v. Harpo, Inc., 719 N.E. 2d 244, 250 (1999). "A restrictive covenant entered into between an employer and employee is not favored by the courts." Jefco Lab., Inc., v. Carroo, 483 N.E. 2d 999, 1001 (1985). "Because a restrictive covenant is a partial restraint of trade, a court will ensure that the covenant's intended effect is not to restrict competition per se." 483 N.E. 2d at 1001.

Although the restrictive covenants in Mr. Norton's employment agreement appear on their face to be somewhat reasonable, the interpretation of these covenants as suggested by the Plaintiff would render them unreasonable. The Plaintiff would essentially convert the limited restrictive covenants into a general non-compete clause. The Plaintiff is seeking to restrain trade and to restrict competition per se.

"One requirement for the enforceability of a post-employment restrictive covenant is the existence of a protectible interest." McRand, Inc., 486 N.E. 2d at 1311. In determining the existence of such an interest, the Illinois courts consider whether the employer has a near permanent relationship with its customers. The participation in the public contract arena, where contracts are regularly competitively re-bid, does not constitute the kind of protectible interest recognized by the courts.

In Slijepcevich v. Caremark, Inc., 1996 WL 11137 (N.D. Ill.), the Court questioned the enforceability of a confidentiality agreement which contained no geographical limitation, failed to delineate what type of information it deemed confidential, and purported to prevent the former employee from working for any competitor in any capacity. 1996 WL 11137 at *3  A

16808-1                                    6

confidentiality agreement which essentially amounts to a post employment covenant not to compete, which is unrestricted in duration or geographical scope, and which essentially defines confidential information as all information provided by employer in any way relating to services offered by it is unreasonable. Serv. Centers of Chicago, Inc. v. Minogue, 535 N.E. 2d 1132, 1136 (1989) (citation omitted). First Health is requesting that Mr. Norton not work for NPA in any capacity and is essentially seeking a covenant not to compete. First Health inappropriately claims that virtually all information as to its services is confidential. The Court should question and reject such overly broad restrictions on trade.

In Disher v. Fulgoni, 464 N.E. 2d 639 (1984), the Court wrote:

> Therefore, in recognition of every individual's fundamental right to pursue that vocation in which he is most proficient, the instant confidentiality agreement can be enforced only if, as in the case of a non-competition agreement: (1) the chronological and geographical limitations are reasonable; (2) the information sought to be protected is, in fact, confidential; and (3) the restriction is reasonably necessary for the protection of a legitimate proprietary interest.

464 N.E. 2d at 642. David Norton has a fundamental right to pursue employment in his area of expertise. The interpretation of the restrictive covenants suggested by First Health would not have reasonable limits, seeks to protect more than confidential items, and is not reasonably necessary to protect any legitimate proprietary interest.

The Plaintiff claims that its confidentiality agreements do not just prohibit Mr. Norton, and its other employees, from divulging confidential information, but also prohibit them completely from working for a competitor. This essentially amounts to a post-employment covenant not to compete that is unrestricted in duration. The Plaintiff is really arguing that all its information is confidential and cannot be used in any manner for work for a competitor. Although not authorized by any language of the employment agreements, First Health seeks a blanket exclusion of all its employees from employment with NPA. This overly broad reading of the employment agreements make them unreasonable.

16808-1                                    7

In its Supplement To Bid Protest, First Health stated: "The fact that the confidentiality restriction in this case does not have a time or geographic limitation does not render it invalid." (Supplement To Bid Protest at 6).[2] In support of its proposition, First Health cited 765 ILCS § 1065/8(b) and 719 N.E. 2d at 250. (Supplement To Bid Protest at 6). As stated by First Health, the Illinois Trade Secret Act does not affect "contractual remedies, whether or not based upon misappropriation of a trade secret, provided however, that a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable <u>solely</u> for lack of durational or geographical limitation on the duty . . .." 765 ILCS § 1065/8(b)(1) (emphasis added). Citing <u>PepsiCo, Inc. v. Redmond</u>, 54 F. 3d 1262, 1272 n.10 and 765 ILCS § 1065/8(b)(1), the <u>Coady</u> Court stated: "[A] confidentiality agreement will not be deemed unenforceable for lack of durational or geographic limitations where trade secrets and confidential information are involved." <u>Coady,</u> 719 N.E. at 250. Of point, is that 765 ILCS § 1065/8(b)(1) and the <u>PepsiCo</u> Court (which quoted 765 ILCS § 1065/8(b)(1)) state that an agreement will not be held unenforceable "solely" for lack of durational or geographic limitation. Thus, it is implied that lack of durational or geographic limitation, while perhaps not a singularly determining factor, is a consideration for deciding the reasonableness of such an agreement. The lack of any reasonable limitation on the interpretation of the restrictive covenants as suggested by First Health weighs heavily against any claim of reasonableness.

### III.   CONTRARY TO COUNT I OF FIRST HEALTH'S COMPLAINT, NORTON HAS NOT BREACHED AND WILL NOT BREACH HIS CONTRACT WITH FIRST HEALTH.

First Health claims that Norton breached, and will continue to breach, the confidentiality clause (Section 7), the customer non-solicitation clause (Section 8), and the employee non-

---

[2]     First Health provided this Court a copy of its Supplement To Bid Protest.

16808-1                                  8

solicitation clause (Section 9) of his agreement with First Health.  See First Health's Complaint, Count I, paragraphs 43-53 at 11,12.

The following elements are necessary in order to properly plead a breach of contract:  (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.  Gallagher Corp. v. Russ, 721 N.E. 2d 605, 611 (1999); Elson v. State Farm and Casualty Co., 691 N.E. 2d 807, 811 (1998). "To prevail on a breach of contract claim, a plaintiff must establish that there was an agreement which the defendant breached, thereby causing damages to the plaintiff."  Glenn Matthews and Maint. Supply Co., Inc., v. Unisource Worldwide, Inc., 748 A. 2d 219, 221 (Pa. Super. 2000) (citation omitted).

The Plaintiff has failed to establish facts to demonstrate a breach of the restrictive covenants.  Mr. Norton has not revealed any confidential or proprietary information of  First Health, he has only responded to an unsolicited RFP by a government agency as expected under the restrictive covenants, and he has not solicited any First Health employees.

## IV.    CONTRARY TO COUNT II AND COUNT VI OF FIRST HEALTH'S COMPLAINT, NEITHER NORTON NOR NPA HAS MISAPPROPRIATED ANY TRADE SECRETS.

First Health claims that Norton misappropriated trade secrets under common law and 765 ILCS §§ 1065/1 – 1065/8 and that NPA misappropriated trade secrets from First Health.  See First Health's Complaint, Counts II and VI, paragraphs 54-64 at 14-16; 86-98 at 22-25.

According to the Illinois Trade Secrets Act:

Trade Secret means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:  (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

16808-1                                                9

IL. St. Ch. 765 § 1065/2 (d). "[I]nformation generally known or understood within an industry even if not to the public at large" is not entitled trade secret protection. Pope v. Alberto-Culver Co., 694 N.E. 2d 615, 617 (1998). Information "within the realm of general skills and knowledge in the industry cannot be a trade secret." 694 N.E. 2d at 617.

Referring to the Restatement of Torts, the Supreme Court of Illinois identified six factors as significant in determining the existence of a trade secret:

> (1) [T]he extent to which the information is known outside of [plaintiff's] business; (2) the extent to which it is known by employees and others involved in [plaintiff's] business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; [and] (6) the ease of difficulty with which the information could be properly acquired or duplicated by others.

ILG Ind., Inc. v. Scott, 273 N.E. 2d 393, 396 (1971) quoting Restatement of Torts, § 757, comment b, p. 6. According to Pennsylvania Law, the plaintiff must demonstrate the following in order to prove misappropriation of a trade secret:

> (1) that there was a trade secret...;  (2) that it was of value to the employer and important in the conduct of his business; (3) that by reason of discovery or ownership the employer had the right to the use and enjoyment of the secret; (4) that the secret was communicated to the employee while he was in a position of trust and confidence under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of the employer.

West Mountain Poultry Co. v. Gress, 455 A. 2d 651, 653 (Pa. Super.1982), quoting MacBeth-Evans Glass Co. v. Schnelbach, 86 A. 688, 691 (Pa. 1913). See also Gruenwald v. Advanced Computer Application, Inc., 730 A. 2d 1004, 1012-1013 (Pa.Super.1999). "[I]nformation is not protectible where it has not been treated as confidential and secret by the employer, was generally available to other employees and known by persons in the trade, [or] could easily be duplicated by reference to telephone directories or industry publications...." Drummond American Corp. v. Murphy, 1987 WL 16224 at *6 (applying Illinois law). Regardless of any restrictive covenant, an employee may "take with him general skills and knowledge acquired during his former employment." Packard Inst. Co. v. Reich, 412 N.E. 2d 617 (1980). Against any interest of an

employer to protect its information "is the right of an individual to follow a particular occupation, which is a fundamental right, and 'one who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge, and expertise acquired through his experience.' Jefco Lab., 483 N.E. 2d at 1002 (1985), quoting Smith Oil Corp. v. Viking Chem. Corp., 468 N.E. 2d 797 (1984). "Depriving a person of his right to work is a drastic method at best, and should only be invoked where irreparable injury is being done to the employer." Brunner & Lay, Inc. v. Chapin, 172 N.E. 2d 652, 655 (1961).

The plaintiffs in Teradyne, Inc. v. Clear Comm. Corp. alleged that the defendants were "lured" to the new company, suggesting that the new company lured them specifically because they possessed Teradyne trade secrets. Teradyne, Inc. v. Clear Comm. Corp., 707 F. Supp. 353, 356 (N.D. Ill. 1989). The Court concluded that "presumably after the passage of time these men would no longer possess confidential information of value." 707 F. Supp. at 356. "[T]he law does permit, or perhaps encourage, employees to take with them 'general skills and knowledge acquired during his tenure with his former employer'." 707 F. Supp. at 356 (citation omitted). "[P]rotection of trade secrets should not render employees substantially unemployable in the field of their experience." 707 F. Supp. at 356 citing E.W. Bliss Co. v. Struthers-Dunn, Inc., 408 F. 2d 1108, 1112-13 (8th Cir. 1969).

The Supreme Court of Pennsylvania has held that a man's aptitude, skill, dexterity, mental and manual ability, and other subjective knowledge obtained while in the course of his employment belong to the employee. While the use of a restrictive covenant may curtail use, they are not the property of the employer. Spring Steels, Inc. v. Molloy, 162 A.2d 370, 373 (Pa. 1960).

An employer is entitled to the protection of confidential information. Morgan's Home Equip. v. Martucci, 136 A. 2d 838, 842 (Pa. 1957). However, the information protected must be a particular secret of the employer and of particular importance to his business, not a general secret of the trade. Bell Fuel Corp. v. Cattolico, 544 A. 2d 450, 460 (Pa. Super. 1988), alloc. denied,

16808-1                                    11

554 A. 2d 505 (Pa. Super.1989). The inquiry in determining whether the information is protected revolves around whether the information is a particular secret belonging to the employer, developed through its efforts or investment, and of value to the continuation of the employer's business. 544 A. 2d at 461; Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy, 203 A. 2d 469, 471 (Pa. 1964); Spring Steels Inc., 162 A. 2d at 372-3.

The Plaintiff has claimed items were confidential that have no apparent economic value. First Health vaguely claims that the value is that these items add to the credibility of NPA's proposal. The Plaintiff has not shown an economic value to most, if not all, of the items it claims are confidential. Furthermore, the money expended on developing the alleged trade secret was PDA's money. Additionally, the information that the Plaintiff claims is confidential is actually available to the public and is generally known. By participating in a public contracting process, which results in information related to the contract being publicly available, the Plaintiff has not taken reasonable efforts to maintain the secrecy and confidentiality of the information.[3]   Also, much of the "confidential" information is, in actuality, the general skills and knowledge of Mr. Norton or other persons.

The information which First Health claims to have been disclosed by Norton and/or used by NPA is not a trade secret, confidential, or proprietary. The information is in the public domain and/or known to the industry. For example, much of the information was derived from First Health's 1995 bid proposal and the RFP itself which are matters of public record.

INEVITABLE DISCLOSURE

---

[3]     The Commonwealth of Pennsylvania has ruled that the contract between the successful bidder and the Department of Transportation to perform an emissions inspections program and the documents included therein by reference (i.e., the proposal) was a public record for purposes of the Right to Know Act. "It is not to protect the business secrets of private companies who voluntarily enter into a contract containing such 'secrets' with a public agency subject to the provisions of the Act." Envirotest Partners v. Commonwealth of Pennsylvania, Dep't of Transportation, 664 A. 2d 208, 214-5 (Pa. Commw. 1995).

First Health claims that "a party may be held liable for misappropriation of a trade secret as a consequence of hiring a competitor's employee by placing that employee in a position that would result in the inevitable disclosure or use of the trade secret." (Supplement To Bid Protest at 11). For such proposition, First Health cites PepsiCo, Inc. v. Redmond, 54 F. 3d 1262 (7th Cir. 1997) and Air Products and Chemicals, Inc. v. Johnson, 442 A. 2d 1114 (Pa. Super 1981).

The PepsiCo Court discusses two cases, Teradyne, Inc. v. Clear Comm. Corp., 707 F. Supp. 353 (N.D. Ill. 1989) and AMP Inc. v. Fleischhaker, 823 F. 2d. 1199 (7th Cir. 1987), which acknowledge that courts may enjoin the "inevitable" disclosure of trade secrets. The Teradyne and AMP courts, however, found that the submissions did not constitute inevitable disclosures. The Teradyne Court held that the "the complaint failed to state a claim because Teradyne did not allege 'that defendants have in fact threatened to use Teradyne's secrets or that they will inevitably do so'." PepsiCo Inc. v. Redmond, 54 F. 3d 1262, 1268 (7th Cir. 1995). The PepsiCo Court quoted Teradyne stating "All that is alleged, at bottom, is that defendants could misuse plaintiff's secrets, and plaintiffs fear they will. This is not enough. It may be that little more is needed, but falling a little short is still falling short." PepsiCo, Inc., 54 F 3d. at 1268, 1269 (quoting Teradyne, Inc., 707 F. Supp. at 357). (emphasis added).

First Health has not established facts to support the inevitability of disclosure of trade secrets by Mr. Norton or other First Health employees. In fact, as previously mentioned, Ms. DiMarco admits that it is possible, even though "very difficult," for Mr. Norton and other First Health employees to work for NPA without disclosing confidential information of First Health. Therefore, Ms. DiMarco is merely alleging the possibility and fear of such disclosure, which falls short of stating a viable claim.

The AMP Court held that the plaintiff failed to show the existence of a trade secret or the likelihood that the defendant would compromise the trade secrets or any other confidential information. PepsiCo, Inc., 54 F. 3d at 1269. "In rejecting that argument, we emphasized that

the mere fact that a person assumed a similar position at a competitor does not, without more, make it 'inevitable that he will use or disclose… trade secret information' so as to 'demonstrate irreparable injury'." PepsiCo, Inc., 54 F. 3d at 1269 (quoting AMP, Inc., 823 F. 2d at 1207).

"The Teradyne and AMP plaintiffs could do nothing more than assert that skilled employees were taking their skills elsewhere…." PepsiCo, Inc., 54 F. 3d at 1269.

The Plaintiff has failed to identify any particularized plan or processes that are confidential to First Health which it is seeking to protect. All the plans and processes of PACE are owned by PDA and are publicly known. First Health is merely alleging that Norton and others are taking their skills elsewhere.

In Continental Group Inc., v. Amoco Chem. Corp., 614 F. 2d 351 (3d Cir 1980), the court found that although there was a risk of inadvertent disclosure of confidential information, the risk was not so sufficient as to justify a preliminary injunction. Citing a Michigan case, the Court explained, '[a] trade secret will not be protected by the extraordinary remedy of injunction of mere suspicion or apprehension of injury. There must be a substantial threat of impending injury before an injunction will issue.' Air Products and Chemicals Inc., 442 A. 2d at 1123 Continental Group, Inc. 614 F. 2d at 359 (citing Allis-Chalmers Mfg. Co. v. Continental Aviation & Eng. Corp., 255 F. Supp. 645, 648, 654 (E.D. Mich. 1966)).

The Plaintiff has not demonstrated that it would be impossible for Norton or former First Health PACE employees to perform their duties under NPA's leadership without disclosing trade secrets or any confidential information. As the PDA owns all the significant aspects of the PACE program, the Defendants are hard pressed to identify a situation where any confidential or proprietary information of First Health could be used by Norton or former First Health PACE employees. Most certainly, the extraordinary remedy of a preliminary injunction is not appropriate because there is only mere suspicion or apprehension by Ms. DiMarco that confidential information will be used by Norton and NPA.

16808-1                                    14

V.      **CONTRARY TO COUNT III AND COUNT IV, NORTON HAS NOT BREACHED ANY FIDUCIARY DUTY TO FIRST HEALTH AND NPA HAS NOT INDUCED ANY BREACH OF FIDUCIARY DUTY.**

First Health claims that Norton breached his fiduciary duty with First Health and that NPA induced Norton's breach of his fiduciary duty. See First Health's Complaint, Counts III and IV, paragraphs 65-70 at 17, 18; 71-76 at 19. "An officer of a corporation owes a fiduciary duty of loyalty to his corporate employer." Comedy Cottage, Inc. v. Berk, 495 N.E. 2d 1006, 1011 (1986) (citation omitted). "An officer's duty of loyalty includes the obligation to disavow any corporate opportunity where the officer's private interest would conflict with those of the corporation." 495 N.E. 2d at 1011 (1986) (citations omitted). "[T]he resignation of an officer will not sever liability for transactions completed after the termination of the party's association with the corporation if the transactions began during the existence of the relationship or were founded on information acquired during the relationship." 495 N.E. 2d at 1011 (1986) (citations omitted). As previously noted, Mr. Norton has not improperly used any confidential information acquired during his employment at First Health. Any actions by Mr. Norton for NPA in competition with First Health occurred after his employment had ended and, therefore, after any fiduciary duty to First Health had ceased. The alleged fiduciary duty claim is unnecessary and inappropriate in the facts of this case.

SOLICITATION

Under Illinois law, the term "solicit" has been held to 'impl[y] personal petition and importunity addressed to a particular individual to do some particular thing.' Smith, Waters, Kuehn, Burnett & Hughes, Ltd. v. Burnett, 548 N.E. 2d 1331, 1336 (1989) (quoting Blacks Law Dictionary 1249 (5th Ed. 1979) ). For example, solicitation of legal services "connotes a private communication directed at a person or category of persons known by an attorney to have an immediate potential need for legal services." 548 N.E. 2d at 1336 (holding that advertisements in newspapers do not constitute "solicitation").

16808-1                                15

The mere possibility of solicitation is not enough to support a preliminary injunction. Nobelpharma USA, Inc. v. The Straumann Company, 1993 Mass. Super. Lexis 245 (1993). "Merely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee." Aetna Building Maint. Co., Inc. v. West, 246 P.2d 11 (1952).

An example where a Court did find indirect solicitation was in Girard v. Rebsamen Insurance Company, 685 S.W. 2d 526 (Ark. 1985). In the Girard case, the defendant, prior to his departure from the plaintiff's employment: 1) informed his customers that he planned to leave the plaintiff's business and 2) told customers what they would have to do for him to continue to service their accounts. 685 S.W. 2d at 529, 530.

The evidence does not show that Mr. Norton has personally petitioned or importuned any First Health employee to work for NPA. Mr. Norton informing Mr. Howells that he was working for NPA and was proposed as office in charge is not solicitation. Mr. Norton's willingness to respond to Mr. Howell's inquiry as to whether he was included in the group of First health employees who might be asked to join NPA does not constitute solicitation.

The question then arises when the one year period runs for purposes of Norton's solicitation clauses. "[A]n employee who receives severance pay in the form of remaining on the active payroll loses his employment status at the date of termination notwithstanding his payroll status." Cronshaw v. Philips Medical Systems, Inc., 1994 WL 622173 (N.D. Ill.) at *5 (citations omitted) (Cronshaw sued Philips Medical Systems, Inc. for sales commissions and bonuses allegedly due under the terms of his employment agreement). The Court explained that such premise was based heavily on the fact that the "continued salary payment was clearly termed 'severance pay'." 1994 WL 622173 (N.D. Ill.) at *5 (citations omitted). The Cronshaw Court held that because the employee performed no service for the employer after the day when he was

notified of his termination, the contractual relationship ended with the employer on the date

notwithstanding that the employee remained on the employer's payroll for a period thereafter.

1994 WL 622173 (N.D. Ill.) at *4-6 . Mr. Norton's employment ended in June of 1999, and,

therefore he is no longer prohibited from soliciting First Health employees. Any injunctive relief

on this point is not appropriate.

### CORPORATE RAIDING

First Health claims that NPA's proposed plan to recruit and hire First Health's existing

PACE Program staff is unlawful. For this proposition, in its Supplement To Bid Protest, at 13,

First Health relies on two cases: <u>Morgan's Home Equip. Corp. v. Martucci</u>, 136 A.2d 838 (Pa.

1957) and <u>ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.</u>,  413 N.E. 2d

1299 (1980).

As quoted by First Health, the 1957 Supreme Court of Pennsylvania case states:

> The systematic inducing of employees to leave their present employment and take work
> with another *is unlawful when the purpose of such enticement is to cripple and destroy an*
> *integral part of a competitive business organization rather than to obtain the services of*
> *particularly gifted or skilled employees.* So, also, when the inducement is made for the
> purpose of having the employees commit wrongs, such as disclosing their former
> employer's trade secrets or enticing away his customers, the injured employer is entitled
> to protection.

<u>Morgan's Home Equip. Corp.</u>, 136 A.2d at 847 (Pa. 1957) (citations omitted) (emphasis added).

NPA is not proposing to hire First Health PACE employees to cripple and destroy First

Health's business or to steal any of First Health's confidential information. It has proposed to

hire First Health employees merely to ameliorate the continuity of the PACE Program and to

accommodate persons who might not otherwise have jobs. By suggesting that the First Health

PACE employees continue their employment with the PACE Program, NPA has not induced

First Health employees to leave their current employment. NPA has proposed that when First

Health's PACE contract with PDA has ended that the First Health employees continue their

employment with the PACE Program. Their employment would merely be under a different

leadership. NPA's proposal to hire First Health employees if and when First Health lost its contract with PDA in no way hindered First Health's proposal or chances of winning the PACE contract. The purpose of hiring First Health employees was not and is not to "cripple and destroy" First Health. Perhaps if NPA induced all of the First Health PACE employees to work for NPA prior to the proposal period, leaving First Health without its employees to run the PACE Program, then an integral part of First Health's business may have been hindered. However, NPA has proposed to hire them only after their contract with PDA on the PACE Program has terminated and their services would no longer be needed by First Health. NPA, as well as the PDA, recognizes the particular gifts and skills of the First Health employees in implementing the PACE Program and NPA has merely proposed that they utilize their skills to fulfill the duties of the PACE Program. The factual circumstances do not approach the level of "corporate raiding."

"Inducing an employee to terminate an employment at will is not illegal provided the only purpose is to secure the services of that employee." Perfect Subscription Co.v. Kavaler, et al., 427 F. Supp. 1289, 1294 (E.D. Pa. 1977) (citations omitted). "It is clear that an employee, absent an agreement to the contrary, has no duty not to compete with a former employer upon severance of their relationship . . ." Carl A. Colteryahn Dairy, Inc., 203 A.2d at 471 (1964) citing Restatement (2d), Agency, § 396.

A company "cannot be punished for hiring competent, experienced employees. It can only be punished if it hired those men for the sole purpose of inflicting injury" on the former employer. Graphic Management Assoc., Inc. v. Steckel and Harris Graphics Corp., 1986 WL 9723 at *7 (E.D. Pa.). First Health has not shown that NPA is seeking to hire First Health employees to inflict injury on First Health. Plus, NPA has a valid interest in these employees and First Health has not shown then to be indispensable. NPA's only purpose in hiring First Health employees was to secure their services.

First Health also cites to <u>ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.</u>, 413 N.E. 2d 1299 (1980). Over thirty employees left ABC to work for Aeronautics. The plaintiff alleged that the defendants "conspired to effectuate the massive departure and subsequent losses to ABC." <u>ABC Trans National Transport, Inc.</u>, 413 N.E. 2d at 1303. In <u>ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.</u>, the defendants organized a competing company, Aeronautics, and planned to walk out en masse from their current company, ABC. Major customers switched over to Aeronautics and various customer files had been removed from ABC. The Court stated:

> Defendants were key management employees of ABC who were actively promoting the interests of Aeronautics while still employed by ABC. The injury to ABC was the sudden, potentially crippling loss of half of its business and major customers, as well as substantial numbers of its personnel. The cause of this injury was defendants' well organized plan and their conduct in furtherance of the plan before they departed from ABC.

413 N.E. 2d at 1306.

Obviously, <u>ABC</u> is factually distinguishable from the circumstances of the NPA bid proposal on PACE. Mr. Norton did not conspire with other employees of First Health, and certainly not while he was at First Health or to cause First Health any losses. The <u>ABC</u> case is not applicable to the case at bar.

<u>CONFIDENTIALITY OF A "UNIFIED PROCESS"</u>

In <u>George S. May Int'l Co. v. Int'l Profit Assoc.</u>, 628 N.E. 2d 647, (1994), the Defendant argued that individual components of its manuals, financial formulas, and software were trade secrets. The Defendant also argued that "its method as a whole was 'unique' and not commonly used." 628 N.E. 2d at 654. The Court found that the items did not amount to trade secrets. The manuals containing the bulk of the formulas were routinely disseminated to incoming trainees before any confidentiality agreements were signed. Certain forms were given to and/or

discussed with prospective clients.  Furthermore, the Defendant never identified the secrets for the employees.

The Court found that the Defendants did not show that the information was outside the 'realm of general skills and knowledge.' 628 N.E. 2d at 654.  "Although Drebin characterized several of May's mathematical formulas as 'not commonly known or used', there was no testimony that they could not readily be duplicated by anyone with some accounting or finance knowledge who sought to achieve ends similar to those of May.  Likewise, there was absolutely no evidence that the sales techniques May claims were trade secrets were not known by the average salesman.  Merely being the first or only one to use particular information does not in and of itself transform otherwise general knowledge into a trade secret."  628 N.E. 2d at 654 (citations omitted).

> Our society is extremely mobile and our free economy is based upon competition.  One who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge and expertise acquired through his experience.  These skills are valuable to such employee in the market place for his services.  Restraints cannot be lightly placed upon his right to compete in the area of his greatest worth.

628 N.E. 2d at 654 (citation omitted).

Similarly, First Health claims a protectible interest in the way it "ties" things together and as to its "unique stamp" but it has failed to show that this information is outside the realm of general skills and knowledge.  The Plaintiff has not shown that its "ties" or "unique stamp," which were never clearly identified, could not be readily duplicated by people familiar with the prescription benefit business area.  Apparently, the Plaintiff would have the Court believe it is the only organization that can assemble pieces of the PACE system into a workable format.  This position is absurd, especially where the RFP and related documents provide detailed guidance on how the system operates.  Many of the items alleged to be confidential by First Health would be commonly known by people in the prescription benefit industry.  Even if First Health did something first, which was often not the case, the otherwise general knowledge to do the task

16808-1                                    20

does not magically become a trade secret.  First Health would force Mr. Norton to erase all his general skills, knowledge and expertise, and to not work in the area of his greatest worth.

The defendants alternatively argued in George S. May Int'l Co. that the information was protected as confidential under the restrictive covenants.  The Court, however, found the restrictive covenants to be too broad in geographic scope to be enforceable. 628 N.E. 2d at 654.

> The restrictive covenants barred all defendants, most of whom were essentially salespersons, from "engaging in any business similar or competitive" to May's for a period of six months.  The agreements also precluded the "direct or indirect" disclosure of any "information" learned while at May, in some cases for a six-month period, in most cases permanently.  The covenants were not limited by activity and did not specify the types of information protected or the context in which it was barred from disclosure.

628 N.E. 2d at 655. The Court reasoned that there were no established client relations in the areas applicable to the restrictive covenants - - "it is clear that defendants' covenants expanded well beyond what is necessary to protect May's legitimate business interests." 628 N.E. 2d at 655.

The overly broad interpretation by First Health of restrictive covenants goes well beyond what is necessary to protect any legitimate business interest.  The Plaintiff seeks to have all information from First Health be deemed confidential and seeks to prevent any competitive business.

In Mettler-Toledo, Inc. v. Todd R. Acker, d/b/a Precision Instrument Serv., 908 F. Supp. 240 (M.D. Pa. 1995). The Court found:

> Acker retained no files, customer lists, data bases, microfiche films or other stored data belonging to Mettler-Toledo.  All that he took with him is the accumulated knowledge obtained over his seven year period with the company.  Mettler-Toledo has no protectible interest in the customer information at issue.  A good deal of the information can be obtained from sources available to the public generally, such as telephone directories, university and hospital directories.  The remainder can be readily obtained by contacting the entities listed in such directories and making inquiries as to who should be contacted about servicing the precision equipment, when services fall due, etc.  All of this can be accomplished with relative ease and some perseverance by Acker or any one else familiar enough with the industry to know what types of businesses or agencies use precision equipment.

908 F. Supp. at 247. The Court further explained: "The effort that went into compiling the list [in Appleby v. Caradon Thermal-Gard (M.D. Pa. 1995)] and its uniqueness and the inability of others in the industry to readily or inexpensively compile the same list made it protectible as a trade secret. Mettler-Toledo's list, on the other hand, has none of these qualities." 908 F. Supp. at 247-248. "Pieces of information concerning customers which an employee may recall from years of dealing with and helping to compile the same, or comparable data which he is able to compile on his own based on the experience and knowledge acquired through years of working in the business, are not protected as confidential trade secrets." 908 F. Supp. at 248. Having found that the information was not a confidential trade secret, the court found that the confidentiality clause set forth in the defendants' employment agreement did not apply.[4]

> Granting Mettler-Toledo the relief which it seeks would give it the functional equivalent of a non-compete agreement... Acker did not sign a non-compete agreement. There is, therefore, nothing which legally bars him from competing directly against it in his former territory and it would be improper for this court to bring about that result. He is entitled to use all of the skills, knowledge, and business acumen he acquired over the years he was employed at Mettler-Toledo. So long as he uses no trade secrets of confidential information of the company, he is free to compete aggressively against it.

908 F. Supp. at 248 (emphasis added).

The Defendants have shown that all the allegedly confidential information of First Health can be obtained from sources available to the public or can be readily obtained by contacting the appropriate entities. First Health is seeking the functional equivalent of a non-compete agreement, but Mr. Norton, and First Health employees, did not sign a non-compete agreement.

In Nat'l Risk Management, Inc. v. Bramwell, 819 F. Supp. 417 (E.D. Pa. 1993), quoting Anaconda Co. v. Metric Tool & Die Co., 485 F. Supp. 410,422 (E.D. Pa. 1980), the Nat'l Risk

---

[4]    The applicable clause regarding confidentiality provided that:

I further understand that any knowledge whatsoever of a confidential nature which I may acquire as a result of or in connection with any employment shall remain the sole and exclusive property of Mettler Instrument Corporation both during and after termination of my employment.

Management Court stated: "A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectible secret." 819 F. Supp at 431. Quoting Continental Data Systems, Inc. v. Exxon Corp., 638 F. Supp. 432, 442 (E.D. Pa. 1986), the Nat'l Risk Management Court further stated:

> The owner of a trade secret, unlike the owner of a patent, does not have a monopoly over the process or formula. He is only protected from other persons' gaining access to it either by stealing it directly from him, or having another to whom it was lawfully disclosed do so. Others in the field are free to arrive at precisely the same method and to use the method so long as they obtain their knowledge through their own independent efforts.

819 F. Supp. at 431. The Court explained that although the individual forms in the plaintiff's proposal book were compilations of public information, the combination of information (the decisions to include and exclude certain elements from a larger pool of data) was not in the public domain and may qualify the proposal book as a trade secret. 819 F. Supp. at 431, 432 (citing Continental Data Systems, Inc., 638 F. Supp. at 443).

Certainly, any combination of information of First Health regarding its PACE proposal was in the public domain, as it was contained in its previous proposals and RFP that were open to review by the public. Furthermore, NPA is free to take the pieces of the PACE Program and arrive at the same or similar results as First Health. First Health, despite its protestations, does not possess a monopoly on running the PACE Program.

The Plaintiffs in Nat'l Risk Management argued that "they are seeking not to protect the 'pieces' of the puzzle, but rather, the 'method' for putting the pieces together into a cohesive picture. It is this 'method' however, that is disclosed to potential clients in plaintiffs' proposal book and explained to Clients when plaintiff makes a presentation." 819 F. Supp. at 433. Thus, the court denied the plaintiffs the requested protection.

---

Mettler-Toledo, Inc., 908 F. Supp. at 248.

16808-1                                                  23

Similarly, the alleged "ties" or "unique stamps" of First Health, if any, are revealed through the RFP and related documents. The method for piecing together the PACE Program is publicly known and owned, and NPA is free to piece together the PACE components even if they happen to resemble, by necessity, First Health's operation.

**VI.    CONTRARY TO COUNT V AND COUNT VII OF FIRST HEALTH'S COMPLAINT, NPA HAS NOT TORTIOUSLY INTERFERED WITH NORTON'S CONTRACT WITH FIRST HEALTH, AND NEITHER NORTON NOR NPA HAS TORIOUSLY INTERFERED WITH ANY PROSPECTIVE ECONOMIC ADVANTAGE OF FIRST HEALTH**

First Health claims that NPA tortiously interfered with Norton's contract with First Health and that Norton and NPA tortiously interfered with First Health's prospective economic advantage. See First Health's Complaint, Counts V and VII, paragraphs 77-85 at 20, 21; 99-112 at 26-28.

Under Pennsylvania law, there are the following elements to a tort claim for interference with contractual relations: "The plaintiff must demonstrate the existence of present of prospective contractual relations, an intent on the part of the defendants to harm the plaintiff by interfering with those contractual relations, the absence of a privilege or justification for the interference and damages." McMorris v. Williamsport Hosp., 597 F. Supp. 899, 917 (M.D. Pa. 1984) (citing Glazer v. Chandler, 200 A. 2d 416 (Pa. 1964) "(stating that 'numerous cases' emanating from Pennsylvania courts comport with this definition of the tortious interference claim)" and citing Restatement (Second) of Torts § 766).

The Plaintiff's claim for tortious interference fails to meet some of the requirements. As to tortious interference of NPA in the employment contract of Norton, the Plaintiff had not shown an intent to harm on NPA's part and has not shown any breach of the restrictive covenants. As to tortious interference in First Health's prospective economic advantage, there is no prospective economic advantage in a contract which has not yet been awarded to First Health. There is, in essence, no contract to interfere with. There is again no showing of intent to harm.

16808-1                                    24

Any alleged interference in an alleged economic advantage of First Health, is justified due to the RFP and the Commonwealth's plan to re-bid the contract. The PDA requested the "interference" as it is entitled by law to do.

## VII.    FIRST HEALTH HAS BROUGHT THIS ACTION WITH "UNCLEAN HANDS", AND, THUS SHOULD NOT BE PERMITTED TO PURSUE ITS CLAIMS.

"[B]efore a Complainant can have a standing in Court he must first show that not only has he a good and meritorious case of action, but he must come into Court with clean hands." Salomon Smith Barney, Inc. v. Vockel, 2000 WL 558580 at *3 (E.D. Pa.). 'The governing principle is that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the Court will be shut against him in limine'." 2000 WL 558580 at *3 (E.D. Pa.) (citation omitted). See also Monsanto Co. v. Rohm & Haas Co., 456 F. 2d 592, 598 (3d Cir. 1972), cert. denied , 407 U.S. 934 (1972) (The doctrine of unclean hands "is far more than a mere banality. It is a self-imposed ordinance that closes the doors to a court of equity to one tainted with inequitableness or bad faith relative to the mater in which he seeks relief, however improper may have been the behavior of the defendant.")

The failure of the Plaintiff to note its objection to the Department's position, that First Health employees can be proposed to be hired by bidders, results in "unclean hands" in seeking injunctive relief. First Health has violated conscience and not shown good faith. In allowing other bidders to include "objectionable" items in their bids and then to only object when its bid is not selected, First Health should not have equitable relief available. No relief should be granted that inhibits or prohibits the hiring of First Health employees by NPA. [5]

---

[5]    The Field Procurement Handbook states that a bidder, such as First Health, who is "aggrieved in connection with the solicitation" of a contract may file a protest within seven (7) days of knowing "of the facts giving rise to the protest." The Handbook refers to protests "before bid opening" and "before award." Chapter 58, A-D. First Health waived any right to protest the hiring of its employees by not following this procedure.

VIII.   **RELIEF CANNOT BE GRANTED BECAUSE OF THE ABSENCE OF AN INDISPENSIBLE PARTY**

Fed. R. Civ. P. 19 (a) states:

A person... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest

The PDA is an indispensable party or a "person" needed for a just adjudication. PDA has an interest in protecting its competitive bid process and in securing a contract to continue the PACE program. Any relief requested by the Plaintiff cannot be accomplished in the absence of the PDA. The absence of PDA may impair its ability to protect its interests. The absence of PDA could result in inconsistent obligations for NPA. NPA has an obligation to PDA to honor its bid and to contract for operation of the PACE program. If the Court should rule in any manner to inhibit or stop NPA from meeting its obligations to PDA, PDA could sue NPA for essentially a breach of contract. Other inconsistent obligations could conceivably result to NPA. As a result, PDA should have been joined by the Plaintiff who clearly knew of PDA's interest.

The defense of failure to join a party indispensable under Rule 19 may be raised in an answer, as Defendants did, or at the trial on the merits. Fed. R. Civ. P. 12 (h). The Defendants raised this defense also during the argument on the motion for temporary restraining order. The Plaintiff has neglected to or otherwise failed to join the PDA. As a result, the Court should deny any relief requested by the Plaintiff.

IX.   **THE PLAINTIFF SHOULD NOT BE ALLOWED TO PREVAIL ON ISSUES NOT CLEARLY IDENTIFIED IN DISCOVERY RESPONSES**

The Defendants requested interrogatories that the Plaintiff "[i]dentify and describe in detail the alleged confidential and proprietary business information that is owned by First

Health' which was allegedly used and/or disclosed by David Norton and/or NPA for it's PACE proposal." (Interrogatory 9). The Plaintiff only identified the nineteen (19) items covered in paragraph 25 of Defendant's Proposed Findings of Fact. At trial, the Plaintiff raised additional items to which the Defendants did not have a fair opportunity to prepare a response, which are identified in paragraphs 26 and 27 of Defendants' Proposed Findings. As a result, the Defendants did not have a full and fair opportunity to explore these new allegations through discovery or investigation to prepare for trial. For example, Defendants had no opportunity to ask Mr. Snedden or Mr. Howells at deposition whether these new items were confidential and proprietary to First Health. Although the Defendants believe their response is more than adequate to defeat First Health's claims, no relief is appropriate on these newly revealed items because of Plaintiff's failure to disclose them during discovery.

"A party that without substantial justification fails to disclose information… shall not, unless the failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion, any witness or information not so disclosed." Fed. R. Civ. P. 37 (c). "A party is under a duty to supplement at appropriate intervals its disclosures…(a) if the party learns that in some material respect the information disclosed is incomplete…." Fed. R. Civ. P. 26 (e)(1)-(2). Although the Plaintiff may not have known of additional items claimed to be confidential until shortly before the hearing, he had an obligation to supplement at that time or be barred from using that evidence. The Defendants should not be forced to guess at what items First Health believes are confidential. Although it may be used at a full trial in this case, the newly revealed information should not be allowed to form the basis for a preliminary injunction.

The Discovery process is designed "to make a trial 'less a game of blind mans bluff and more a fair contest with the basic issues and fact disclosed to the fullest practicable extent possible." JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., 1998 U.S. Dist. LEXIS 7750 (E.D. PA. 1998), (citing Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996) (citing

16808-1                              27

U.S. v. Proctor & Gamble, 356 U.S. 677, 683 (1958)).  Discovery is also intended "to narrow and clarify the issues in dispute."  JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., 1998 UlSl Dist. LEXIS 7750 (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947).  Interrogatories are ineffective unless parties live up to their duty to "provide true, explicit, responsive, complete, and candid answers" to discovery requests.  Hansel, 169 F.R.D. at 305.

The Plaintiff should not be allowed to conduct a hearing by ambush.  Any relief on issues revealed at trial (or in Plaintiff's post-hearing submission) for the first time should be excluded from a ruling on the motion for preliminary injunction.

### Conclusion

The Plaintiff has failed to meet its burden of proof on any of its claims or on the requirements for issuing a preliminary injunction.  First Health has constructed its case upon mere conjecture and unfounded assumptions.  The Court should deny the request for a preliminary injunction.

Respectfully Submitted,

Thomas B. York
Christine D. Consiglio
Dilworth Paxson LLP
305 N Front Street, Suite 403
Harrisburg, PA  17101
(717) 236-4812

July 14, 2000